**NOT FOR PUBLICATION**                                    **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                           :
STEVEN A. PILGRIM,         :
                           :       Civil Action No. 03-2089 (JLL)
            Petitioner,    :
                           :
      v.                   :
                           :            **OPINION**
ROY L. HENDRICKS, et al.,  :
                           :
            Respondents.   :
_____:
```

**APPEARANCES:**

> STEVEN A. PILGRIM, Petitioner Pro Se
> SBI #155172B-#203155
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625

> JOAN E. LOVE, ESQ.
> Office of the Essex County Prosecutor
> Essex County Courts Building
> Newark, New Jersey 07102
> Attorneys for Respondents

**LINARES, District Judge**

This matter is before the Court on petitioner Steven A.
Pilgrim's application for habeas corpus relief under 28 U.S.C. §
2254.  For the reasons stated below, the petition for habeas
relief will be denied for failure to make a substantial showing
of a federal statutory or constitutional deprivation.

I.  BACKGROUND

A.  Procedural History

Petitioner, Steven A. Pilgrim ("Pilgrim"), is presently confined at the New Jersey State Prison in Trenton, New Jersey, serving an aggregate sentence of life imprisonment with a 25-year period of parole ineligibility.

On May 15, 1992, Pilgrim was convicted by bench trial, before the Honorable Benjamin Cohen, J.S.C., on the following charges: aggravated manslaughter, N.J.S.A. 2C:11-4a, as a lesser included offense to murder; unlawful possession of a handgun, N.J.S.A. 2C:39-5b; and possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a.  Pilgrim was acquitted of the murder charge, N.J.S.A. 2C:11-3a.  The court sentenced Pilgrim to a mandatory extended life term with a 25-year parole disqualifier on the aggravated manslaughter conviction.  The conviction for possession of a handgun for an unlawful purpose was merged with the aggravated manslaughter conviction, and the court imposed a 5-year prison term on the remaining weapons conviction to run concurrently with the life term.

Pilgrim filed a direct appeal from this conviction and sentence, and the New Jersey Appellate Division affirmed the judgment in an unpublished Opinion decided on November 28, 1995. The New Jersey Supreme Court denied certification on February 15,

1996.  State v. Pilgrim, A-3911-93T4 (App. Div. Nov. 28, 1995), certif. denied, 143 N.J. 518 (1996).

Thereafter, Pilgrim filed his first state motion for post-conviction relief ("PCR"), based on claims of ineffective assistance of trial and appellate counsel.  On December 12, 1997, Judge Cohen denied the PCR petition and the request for an evidentiary hearing.  In an unpublished Opinion dated April 6, 1999, the Appellate Division affirmed the trial court's ruling with respect to the claim pertaining to ineffective assistance of trial counsel.  However, the Appellate Division remanded the matter to give Pilgrim the opportunity to file a certification in support of his claim respecting appellate counsel.

Pilgrim filed a second PCR petition with a certification in support of his claim that his appellate counsel was ineffective.  On February 16, 2000, Judge Cohen denied relief and the request for an evidentiary hearing.  The Appellate Division affirmed on October 2, 2001, and the New Jersey Supreme Court denied certification on January 10, 2002.

Pilgrim then filed this federal habeas petition on or about May 8, 2003.  The respondents answered the petition and provided the relevant state court record on March 31, 2004.

B.  Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the

3

appropriate deference under 28 U.S.C. § 2254(e)(1), will simply

reproduce the New Jersey Appellate Division's factual recitation:

> On June 28, 1991, defendant entered the police precinct at the Seth Boyden Housing Project in Newark and told the police his roommate, Aaron McDonald, had been shot. Defendant requested the police to hurry and led them to his apartment on the third floor, where the police observed McDonald lying on the floor in a pool of blood.  McDonald had been shot in the head.
>
> Defendant then, without being questioned by the police, told the police that the shooter must have swung from a rope through the window and shot his roommate.  Defendant claimed when he heard the shot, he ran into the kitchen to hide. Defendant then told the police: "when I shot, I mean when they shot, the guy said the guy's name." Defendant then stopped talking.
>
> The police transported defendant from the apartment to the police station.  Before defendant was questioned, he was given his warnings pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  Defendant then voluntarily and knowingly waived his rights and agreed to answer questions.  The police told defendant that his version of the shooting was suspicious because of the difficulty involved in climbing up the outside wall of the building to reach the third floor.  Defendant then told police that he was holding the gun.  He said he was passing the gun to McDonald when it discharged, shooting McDonald. Defendant then told the police where the gun could be found. Defendant led the police to the location of the gun, where it was recovered.
>
> The police and defendant returned to the police station where defendant was again given his Miranda warnings. Defendant again voluntarily and knowingly waived his rights and agreed to give a written statement.  In the written statement, defendant gave his age, described his relationship with McDonald, and told police that his first version of how the shooting occurred was a lie.  Defendant said that his version, claiming the shooting was an accident, was true.  Defendant then exercised his rights under Miranda and refused to answer any more questions until he spoke with a lawyer.  Thereafter, the police stopped questioning defendant.

(Appellate Division per curiam Opinion decided November 28, 1995, at pp. 2-3).

## II.  CLAIMS FOR HABEAS RELIEF

Pilgrim raises the following claims in his federal habeas petition:[1] (1) petitioner's inculpatory statement should have been suppressed because he did not knowingly and intelligently waive his right to remain silent; (2) State witness, Vel Tucker's testimony concerning petitioner's prior bad acts and crimes should not have been allowed into evidence; (3) petitioner was denied effective assistance of trial counsel based on counsel's failure to investigate and prepare a proper defense; (4) petitioner was denied effective assistance of appellate counsel because counsel would not meet with him and failed to fully examine the record; (5) the trial court's refusal to grant an evidentiary hearing on his claims of ineffective assistance of appellate counsel denied petitioner his constitutional right to appeal.

## III.  STANDARD GOVERNING REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition

---

[1]  The State does not contend that any of petitioner's claims are unexhausted, and this Court finds that the claims have been fully presented to the state courts for review.

5

should be construed liberally and with a measure of tolerance. See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Duarte v. Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Daniels is a <u>pro se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122 S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step

7

inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  See Werts, 228 F.3d at 196-97; Matteo, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  Id.  AEDPA prohibits such de novo review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  Id.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit

has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  ANALYSIS

A.  The Inculpatory Statement Should Have Been Suppressed

Pilgrim first asserts that his inculpatory statement given to the police on the day of the shooting should have been suppressed because he did not know that he had the right to remain silent and he did not knowingly and intelligently waive his right to remain silent.  In short, Pilgrim contends that his inculpatory statement was taken by the police in violation of his rights under Miranda.

Pilgrim raised this claim on direct appeal.  The Appellate Division found that the claim was "clearly without merit."  The court added:

> The Miranda issue is fact sensitive and we are satisfied that there is no basis to disturb Judge Cohen's findings that defendant was orally advised of his Miranda rights and voluntarily and knowingly waived them.  Defendant asserts that these findings are unsupported because he did not, as later, sign a written waiver before he made the first inculpatory statement.  We disagree.  The findings made by Judge Cohen were based "on sufficient credible evidence present in the record."  State v. Johnson, 42 N.J. 146, 162 (1964).

(Appellate Division's November 28, 1995 Opinion, at pg. 4).

At the Miranda hearing, Judge Cohen found that, with respect to Pilgrim's initial statement given before the first Miranda warning, that Pilgrim was not yet a suspect.  He was not in custody and he was not under arrest.  He was not handcuffed as a suspect would have been.  Thus, the court found that the circumstances did not indicate the type of custodial interrogation at issue in Miranda, and that Miranda warnings were not required at that point.  (Transcript of Miranda Hearing, 1T 29:15-24).

The court was also satisfied that once the police officers became suspicious of petitioner's version of the shooting, they gave him the appropriate Miranda warnings.  The court was further satisfied from the testimony and evidence that Pilgrim voluntarily, knowingly, and intelligently waived his rights and agreed to speak to the police.  The court stated:

> ... I am also satisfied that those oral statements were voluntary under the totality of the circumstances, taking into account all of the circumstances including the length of detention, the detail of the Miranda warnings, the length of the interrogation.  I don't find that there was any lengthy detention.  There was no lengthy interrogation.
>
> The defendant was not physically or psychologically pressured.  He was not deprived of food and sleep.  In fact, he was given food shortly thereafter.  He did not appear to be under the influence of drugs or alcohol.  He did not appear to be of such limited intelligence that he couldn't understand what was going on.  He indicated and demonstrated that he could read and write English.  He later indicated in the form that he had completed high school.  So I take those things into account, as well, and I am not satisfied that

10

there is any suggestion that his will was in any way
overborne.

The testimony, the undisputed testimony, was that there were
no promises made, no threats made.  The photographs of the
defendant taken shortly thereafter do not indicate, at least
on their face, any physical marks on the defendant that
would be indicative of any physical coercion; nor has there
been any suggestion that there was any such coercion.

I find, in short, from the totality of the circumstances
that the defendant's oral statements were voluntary.

(Miranda Hearing Transcript, 1T 30:18-31:18).

Pursuant to the Fifth Amendment right against self-

incrimination and the Due Process Clause of the Fourteenth

Amendment, a confession must be voluntary to be admitted into

evidence.  See Dickerson v. United States, 530 U.S. 428, 433

(2000).

To summarize, we hold that when an individual is
taken into custody or otherwise deprived of his freedom
by the authorities in any significant way and is
subjected to questioning, the privilege against self-
incrimination is jeopardized.  Procedural safeguards
must be employed to protect the privilege and unless
other fully effective means are adopted to notify the
person of his right of silence and to assure that the
exercise of the right will be scrupulously honored, the
following measures are required.  He must be warned
prior to any questioning that he has the right to
remain silent, that anything he says can be used
against him in a court of law, that he has the right to
the presence of an attorney, and that if he cannot
afford an attorney one will be appointed for him prior
to any questioning if he so desires.  Opportunity to
exercise these rights must be afforded to him
throughout the interrogation.  After such warnings have
been given, and such opportunity afforded him, the
individual may knowingly and intelligently waive these
rights and agree to answer questions or make a
statement.  But unless and until such warnings and
waiver are demonstrated by the prosecution at trial, no

evidence obtained as a result of interrogation can be
used against him.

Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).  The Miranda
warnings are a constitutional requirement.  Dickerson, 530 U.S.
at 444.  "The requirement that Miranda warnings be given does
not, of course, dispense with the voluntariness inquiry.  But ...
'[c]ases in which a defendant can make a colorable argument that
a self-incriminating statement was 'compelled' despite the fact
that the law enforcement authorities adhered to the dictates of
Miranda are rare.'"  Dickerson, 530 U.S. at 444.

"[T]he ultimate issue of 'voluntariness' is a legal question
requiring independent federal determination," and is thus not
subject to the § 2254(d) presumption of correctness.  Miller v.
Fenton, 474 U.S. 104, 109-110 (1985).

> The Supreme Court has made clear that a statement
> is involuntary when the suspect's "will was overborne
> in such a way as to render his confession the product
> of coercion." Arizona v. Fulminante, 499 U.S. 279, 288,
> 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In determining
> whether a statement is voluntary, Supreme Court
> precedent requires consideration of "the totality of
> all the surrounding circumstances--both the
> characteristics of the accused and the details of the
> interrogation." Dickerson v. United States, 530 U.S.
> 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)
> (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226,
> 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). These
> surrounding circumstances include "not only the crucial
> element of police coercion, Colorado v. Connelly, 479
> U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986),"
> but may also include "the length of the interrogation,
> its location, its continuity, the defendant's maturity,
> education, physical condition, and mental health."
> Withrow v. Williams, 507 U.S. 680, 693, 113 S.Ct. 1745,

123 L.Ed.2d 407 (1993) (some internal citations omitted).

Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002).  "[S]ubsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court if fairly supported in the record and if the other circumstances enumerated in § 2254(d) are inapplicable." Dickerson, 474 U.S. at 117.

Here, Pilgrim does not dispute any of testimony offered by the police officers during the Miranda hearing.  He simply states that he did not know that he had the right to remain silent. Pilgrim does not allege any mental or intellectual defect that prevented him from understanding his rights as the police read them to him.  He does not allege that he ever stated that he did not understand or that he evinced a lack of understanding.  He does not allege any facts of any kind to indicate that he was not able to make a voluntary and knowing waiver of his right to remain silent.  Accordingly, this Court finds that Pilgrim's inculpatory statement was voluntarily, knowingly and intelligently made, and was properly admitted.  Petitioner is not entitled to relief on this claim.

13

B.  <u>Admission of Bad Acts and Other Crimes Testimony</u>

     In his second claim, Pilgrim asserts that he was denied a
fair trial when the court allowed the testimony of Vel Tucker, a
witness for the State, on the issue of Pilgrim's other crimes and
bad acts.  Pilgrim contends that Tucker's testimony was not
relevant to the crime for which he was standing trial.  He also
alleges that Tucker's testimony was highly prejudicial because
she characterized petitioner as assaultive and violent and
predisposed to criminal behavior.

     On direct appeal, the Appellate Division found that the
"testimony of Vel Tucker was properly admitted because
defendant's position was that the shooting was accidental.
Evidence that 'tends to establish that the offense for which
defendant presently is on trial was not inadvertent, accidental,
unintentional, or without guilty knowledge ... is almost
universally admitted.'" (Appellate Division's Nov. 28, 1995
Opinion at pg. 4 (quoting <u>State v. M.L.</u>, 253 N.J. Super. 13, 22
(App. Div. 1991)).  <u>See</u> <u>also</u> New Jersey Rules of Evidence
("N.J.R.E.") 404(b).

     This Court finds that petitioner's claim is a matter of a
state evidentiary ruling.  Generally, matters of state law and
rules of procedure and evidence are not reviewable in a federal
habeas petition.  The Supreme Court has stated that "it is not
the province of a federal habeas court to reexamine state-court

                              14

determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts must afford the states deference in its determinations regarding evidence and procedure. See Crane v. Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability, even if the defendant would prefer to see that evidence admitted"). It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted). The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). An error is not harmless if "it aborts the basic trial process or denies it altogether." Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In this case, the Court finds that the state court's evidentiary ruling with respect to the admission of Vel Tucker's testimony[2] did not violate Pilgrim's right to due process. The testimony was directly relevant to Pilgrim's contention and defense that the shooting was accidental. Thus, under state rules of evidence, it was properly admitted to show Pilgrim's

---

[2] Tucker testified that Pilgrim and the victim were roommates and lovers. Tucker also stated that she had witnessed many physical altercations between Pilgrim and the victim. They had fought with their fists, bottles and lamps. Tucker then testified that two weeks before the shooting, she had overheard Pilgrim threaten to kill the victim. (2T 3:4-5:22; 2T 6:10-7:15).

intent, preparation, and absence of mistake or accident, pursuant to N.J.R.E. 404(b).  The trial court committed no errors of a constitutional dimension and a review of the whole record demonstrates that the trial process was fundamentally fair. Further, there is no showing that the state court determinations "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Williams, 529 U.S. at 412-13. Accordingly, this ground for a writ of habeas corpus will be denied.

C.  Ineffective Assistance of Trial Counsel

Next, Pilgrim asserts that his trial counsel was constitutionally ineffective because he did not investigate or make any pretrial preparation in his case.[3]  He also contends that counsel "forbade him to have a jury trial and threatened to discontinue representing him if he insisted [on testifying] in his own defense."  (Petition, Ground 12C).  Pilgrim raised these claims in his first PCR petition.

---

[3]  This claim relates to petitioner's argument on his state PCR petition that counsel did not properly investigate potential trial witnesses, namely, two potential character witnesses.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under <u>Strickland</u>, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  <u>Id</u>. at 688-89; <u>Jacobs v. Horn</u>, 395 F.3d 92, 102(3d Cir. 2005); <u>Keller v. Larkins</u>, 251 F.3d 408, 418 (3d Cir.), <u>cert</u>. <u>denied</u>, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u>  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

18

> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.

Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.

1020 (1996).

If able to demonstrate deficient performance by counsel,

petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  Strickland, 466 U.S. at 687.

Prejudice is shown if "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

Id. at 695-96.  Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim.  Id. at 697.  See

also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1.  *Counsel "Forced" Petitioner to Waive a Jury Trial*

During the PCR proceeding, Judge Cohen read from the trial

transcript wherein he had carefully questioned Pilgrim with

respect to petitioner's requested waiver of a jury trial. The

court also fully explained petitioner's right to a jury trial to

petitioner, and the consequences of waiving a jury trial.

19

Throughout this dialogue, Pilgrim answered the court's questions affirmatively and with a clear understanding of the rights he was waiving.   The PCR court found:

> Now very frankly, that doesn't sound to me like Mr. Pilgrim
> is forced into this by his attorney.  He had a full, fair
> discussion with his lawyer, which is confidential between
> him and his attorney.  He was explained his rights.  He
> decided with the advice of counsel to waive the jury trial
> and have the case tried before me alone after his rights
> were fully explained to him.  I explained it on the record
> for him, his lawyer, the prosecutor.  I heard everything
> from Mr. Pilgrim agreeing to it, to Miss Mack agreeing to
> it, to the prosecutor have no objection.  I reviewed the
> requisite factors and considered it was an appropriate case
> to be tried before me under those circumstances without a
> jury and I agreed.  Then the form, the required written form
> required by the rules was signed by Mr. Pilgrim, Ms. Mack,
> the prosecutor and I and offered into evidence.  It's
> crystal clear to me that Mr. Pilgrim, far from being forced
> to do this by his trial lawyer, freely, voluntarily,
> knowingly and intelligently made those elections.

(PCT 8:24-9:15).

Thus, the PCR court rejected petitioner's claim that his counsel forced him to waive a jury trial.  After reviewing the record, this Court finds nothing to indicate that the state court decision on this issue was based on an unreasonable application of the facts as presented at trial.  Nor were the decisions of the state PCR and appellate courts contrary to established federal law.  Pilgrim has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  This claim is completely baseless and will be denied for lack of merit.

20

2.  *Counsel "Forced" Petitioner Not to Testify*

At the first PCR hearing, the court found that petitioner was not forced to waive his right to testify at trial. Specifically, the court discussed the colloquy at trial when defense counsel advised the court that defendant would not testify.  The court carefully explained to Pilgrim at the time that he had the right to testify, and made a diligent inquiry as to the voluntary and knowing nature of this waiver. The PCR court stated:

> This does not sound to me like Mr. Pilgrim was forced to not testify at trial.  He was carefully explained, presumably by Miss Mack as she represented but certainly by me on the record that he had a right to testify if he wanted to and an equal right not to testify if he didn't want to.  He said he understood those rights and he agreed that he and his attorney had decided to give up or waive those rights.  And I'm rather certain that that decision, that one factor that played a role in that decision was the notion of <u>State v. Sans</u> and <u>State v. Brunson</u> that had Mr. Pilgrim elected to testify, the State would have been able to seek to introduce on cross-examination of him on the issue of his credibility his prior convictions.  He had been convicted of an armed robbery in 1985 and a burglary in 1984.

> Be that as it may, it's pretty clear from me from the record, it is very clear that he was not forced into that decision, that he did this freely, knowingly and voluntarily.

(PCT 10:21-11:12).

The Appellate Division affirmed the PCR court's denial of relief on this claim substantially for the reasons expressed by the PCR court in its oral opinion of December 12, 1997.

After reviewing the record, this Court finds that Pilgrim voluntarily, and knowingly decided not to testify at trial.  Even if his decision was based on advice of counsel, the advice was clearly a strategic and well-reasoned decision to foreclose the State from introducing Pilgrim's prior criminal record, which included armed robbery and burglary, at trial.  Thus, there is no merit to this claim that counsel's representation was deficient or ineffective.  The state court decisions on this issue were based on a reasonable application of the facts as presented at trial, and were not contrary to established federal law.  Pilgrim has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891. Accordingly, this claim will be denied for lack of merit.

3.  *Counsel Failed to Investigate and Prepare a Defense*

Finally, Pilgrim asserts that his counsel failed to investigate and prepare a defense.  In particular, Pilgrim contends that counsel failed to call two character witnesses.  He also alleged that counsel failed to keep his inculpatory statement out of trial.[4]

---

[4]  This claim is baseless.  Defense counsel fought vigorously to keep Pilgrim's statement out of trial.  There was a Miranda hearing, and counsel presented a strong case for exclusion of Pilgrim's statements.  Further, the PCR court found that Pilgrim was unable to proffer any arguments for the exclusion of his statements that defense counsel should have made but did not.  (December 12, 1997 PCT 13:8-14:16).

22

At the PCR hearing on December 12, 1997, the court rejected
Pilgrim's claims.  The court first noted:

> Now there is an allegation also that Miss Mack was
> ineffective in properly investigating the matter before
> trial and properly preparing the defendant's now
> petitioner's case before trial.
>
> I haven't heard anything that would indicate that Miss Mack
> failed to do those things.  First of all, her representation
> at trial, and as I recall and the record bespeaks, was that
> of a vigorous advocate, attempting to do whatever she could
> to protect the rights of her client.  She vigorously
> defended him, opened, cross-examined witnesses, summed up
> and presented a defense which on its face was certainly not
> a deficient one.

(December 12, 1997 PCT 11:13-24).  The PCR court further found:

> The only thing I've heard is that she chose not to call two
> character witnesses.  Character witnesses, of course who
> know nothing about the case but presumably would have
> testified to the good character of the defendant.
> Certainly, even if giving that credit, which I don't know
> that it deserves, that that is true, that she didn't
> investigate or call two character witnesses, that's purely a
> tactical, strategical decision, well within the bounds of
> discretion of a trial attorney to make that decision and it
> doesn't amount even closely, doesn't even come closely to
> the ineffective assistance of counsel.  I haven't heard a
> scintilla of what she should have done other than
> investigate something, I don't know what, before trial or
> that she didn't prepare when it's obvious from the record
> she did prepare quite a bit.
>
> So a naked allegation that she did not -- an attorney did
> not properly investigate or prepare before trial, how does
> that even come close to meeting the standard of Preciose.
> You have to show a reasonable likelihood of succeeding on
> the two prongs of the test, that her performance was
> deficient and there was a reasonable probability that but
> for her deficient or unprofessional performance, the result
> would have been different, the verdict would have been
> different.  I haven't heard anything.

(Id., 12:3-25).

23

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied, 534 U.S. 919 (2001).  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691-92.  Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different.  Lewis, 915 F.2d at 115.

After reviewing the record, this Court finds nothing that would support Pilgrim's blanket argument that his counsel failed to investigate and prepare a defense for trial.  The state courts found that counsel's representation and performance at trial was

24

vigorous and not deficient on its face.  Further, to the extent that counsel failed to call two character witnesses, this was a strategical decision that must be accorded great deference.  See Strickland, 466 U.S. at 690-91 (strategic decisions made after a reasonable investigation of law and facts relevant to plausible options are virtually unchallengeable).

Therefore, this Court finds nothing to indicate that the state court decisions on this issue were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  The state PCR court found that counsel's decision not to call character witnesses was a strategic decision.  The court also found that counsel's decision, even if deficient, failed to satisfy the second prong of prejudice.  Pilgrim has failed to show how the testimony of these witnesses would have changed the outcome of his case; instead, Pilgrim makes a purely speculative argument of deficiency in representation that is insufficient to establish ineffective assistance of counsel.  Thus, Pilgrim has not demonstrated that the state court decisions of the PCR and appellate courts, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

In sum, Pilgrim has failed to show any instances of deficient performance by trial counsel in his case, which would give rise to a claim of constitutional deprivation.  Moreover, even if there was any small instance of counsel's deficiency, Pilgrim cannot prove the second prong of prejudice.  There was overwhelming and strong evidence against Pilgrim at trial, including his own inculpatory statements, that would not support an argument that Pilgrim was prejudiced by counsel's errors.  Therefore, the ineffective assistance of counsel claims are denied on the merits.

D.   <u>Ineffective Assistance of Appellate Counsel</u>

Pilgrim also broadly asserts that his appellate counsel was ineffective for failing to meet with him and fully examine the record for direct appeal.  Both the state PCR court and the Appellate Division found no merit to Pilgrim's claim.[5]

On his second PCR petition, Pilgrim argued that his appellate counsel was ineffective because he did not raise on direct appeal those claims asserted in his PCR proceedings.  The PCR court rejected this claim on the ground that such claims as

---

[5]  After the first PCR motion, the Appellate Division remanded this claim of ineffective assistance of appellate counsel to give Pilgrim an opportunity to file a certification or affidavit setting forth those facts to support his claim.  In particular, the court instructed petitioner that he must specifically assert the trial errors that would have been presented on appeal had appellate counsel met with petitioner and discussed the trial record.

the ineffective assistance of trial counsel claims are not generally raised on direct appeal because "it requires the appellate court to look beyond the bounds of the record, what's in the transcript and the evidence presented." (February 16, 2000 PCT 21:19-22:2).

Pilgrim next alleged error is the failure to suppress Pilgrim's inculpatory statements. This claim, however, was raised on direct appeal and was rejected by the Appellate Division. (Id. 22:20-23:8). The third argument advanced by Pilgrim was trial counsel's deficient representation in forcing him to waive a jury trial and to forego testifying at trial. Again, that was an issue more appropriately raised on a PCR petition, which it was, and the PCR court and Appellate Division rejected both contentions as meritless. (Id. 23:9-24:8).

Another claim relates to the mandatory extended term imposed by the sentencing court. This claim was raised in the first PCR petition and rejected by that court as well as by the Appellate Division on appeal. The second PCR court found that it "simply would not have made any difference if [the claim] had been raised by Mr. Pilgrim's attorney on direct appeal, because [the claim] would have been considered and rejected by the appellate court as it was on appeal from denial of the first PCR petition." (Id. 24:15-25:4).

Lastly, Pilgrim alleges that appellate counsel should have argued that the State's willful or negligent loss of one of three bullet fragments found in the victim's skull constituted reversible error.  Pilgrim argues that if the third bullet fragment had not been lost, he could have had an expert testify that the bullet ricocheted before it struck the victim, thus supporting an accidental shooting defense.  On appeal from denial of this claim on Pilgrim's second PCR motion, the Appellate Division rejected petitioner's claim and held:

> The PCR judge was also the judge who conducted the bench trial.  We agree entirely with him that defendant was not entitled to a hearing pursuant to State v. Preciose, 129 N.J. 451, 463-64 (1992), because defendant failed to establish a prima facie claim of ineffective assistance of appellate counsel.  This is so because, as the PCR judge found, the evidence was compelling that the bullet which caused the victim's death entered his skull directly, rather than by an atypical manner consistent with defendant's claim that it had ricocheted.
>
> The PCR judge reasoned that, even had appellate counsel raised the bullet fragment issue, it would not have resulted in a reversal of defendant's convictions.  We agree.  As the fact finder during the bench trial, the judge accepted as credible and dispositive the testimony of the medical examiner, Dr. Lyla Perez, who dispelled the ricochet theory because of the path of the bullet into the victim's skull.  She testified that the single bullet hole in the victim's skull which had a "circular round perforation with a thin, even abrasion collar," was inconsistent with the "atypical entrance" of a ricocheting bullet.  In short, an examination of the third bullet fragment, had it been found, would not have altered the trial judge's rejection of the ricocheting theory.

(Ra5, Appellate Division Opinion, decided October 2, 2001, at pp. 3-4).

28

Based on review of the record, this Court agrees with the state courts that none of the alleged failures by the appellate counsel had any reasonable potential for affecting the outcome of the appeal.

Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard previously discussed. See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July 26, 2004).  In order to prevail on a claim that appellate counsel was ineffective, Pilgrim must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir. 1999), cert. dismissed, 527 U.S. 1050 (1999).

Here, Pilgrim has failed to show that the performance of his appellate counsel was deficient or that he was prejudiced thereby, and in light of the evaluation of this issue by the state courts, this Court cannot conclude that the determination of this issue resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact.  Williams v. Taylor, supra.  Accordingly, the Court will deny federal habeas relief on this claim.

29

E.   <u>The State Court Erred in Denying an Evidentiary Hearing</u>

Finally, Pilgrim contends that he was denied an evidentiary hearing, which affected his constitutional right to appeal.  This issue is a matter of state procedural law.  As stated above, matters of state procedural law are not generally reviewable in a federal habeas petition and a federal habeas court will not review state-court determinations on state-law questions."  <u>Estelle</u>, 502 U.S. at 67-68.  Here, it is not for this Court to review on a federal habeas petition whether the state court incorrectly denied Pilgrim an evidentiary hearing with respect to his ineffective assistance of counsel claims.

Indeed, the state appellate court ruled that Pilgrim was not entitled to an evidentiary hearing under <u>Preciose</u> because Pilgrim had failed to establish a <u>prima facie</u> case of ineffective assistance of counsel.  (Ra5, Appellate Division Opinion, decided October 2, 2001, at pg. 3).  Evidentiary hearings are afforded only when a petitioner can show a reasonable likelihood that his claims will succeed on the merits, or when the facts necessary to determine the claim lies outside of the trial record.  <u>Preciose</u>, 129 N.J. at 462.  Thus, Pilgrim was unable to satisfy the requirement that his counsel was deficient or that the alleged deficiency actually prejudiced petitioner, such that it had a reasonable potential for affecting the outcome of the trial or appeal.  Hence, an evidentiary hearing was not warranted, and

30

petitioner was not denied due process or any other federally protected right.  Accordingly, this claim with respect to denial of a state evidentiary hearing will be denied as substantively meritless and for failure to state a federal constitutional deprivation.

### V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.


          s/ Jose L. Linares
        Jose L. Linares, U.S.D.J.

DATED: October 26, 2005